## Woodward *versus* Leiby *et al.*

A contract, whereby the owner of land leases the same for a period of five years, and the lessee stipulates to erect thereon, during the first year of the term, a building of the value of $3000, the lessor covenanting, in addition to the annual value of the premises (which is fixed at $300), to pay to the lessee, when the building shall have been completed, the sum of $1500, although, in one aspect, an improvement lease, is nevertheless, as to the mechanics and material-men, a contract for the erection of the building, payable partly in money and partly out of the profits of the land; and the estate of the lessor is bound by the mechanics' liens.

ERROR to the Common Pleas of *Cumberland county*.

This was a *scire facias* on a mechanic's claim, filed by John Woodward against Jacob Leiby, owner, and ·Isaac Blizzard, contractor, for the sum of $45, against a two-story brick warehouse and lot of ground situate in Oakville, in the township of Newton, on the north side of the Cumberland Valley Railroad, for carpenter work done in and about the erection of the said warehouse.

The building in question was erected by Isaac Blizzard, under the following agreement with Jacob Leiby, the owner of the land :—

"Agreement made the —— day of February 1857, between Jacob Leiby of the one part, and Isaac Blizzard, acting as agent under a contract with Robert Wilson, of the other part, witnesseth that the said Jacob Leiby doth, by this agreement, lease to the said Isaac Blizzard, agent, the lot of ground in Oakville, Cumberland county, containing one acre and eighty perches, having thereon erected a two-story brick house, a two-story frame house, and stabling, the same which the said Jacob Leiby purchased of J. W. Vanderbilt, for the term of five years, to be completed and ended on the 31st of March 1862, without any further notice than that contained in this lease. In consideration whereof, the said Isaac Blizzard doth hereby covenant and agree that he will, during the first year of the said term, erect, construct, build, and finish, upon the said lot, along the Cumberland Valley Railroad, a brick warehouse, at least one hundred feet long, and thirty wide, upon the most approved and modern plan of buildings, and cover the same with a tin roof, and finish it inside and out, in a manner that will adapt it perfectly to all business of a warehouseman engaged in the purchase and sale of grain, the said building to be painted, pencilled, spotted, and in all particulars finished in the best manner and with the best materials. And in addition to the annual value of premises, the said Jacob Leiby

[Woodward *v.* Leiby *et al.*]

doth hereby covenant and agree to pay to the said Isaac Blizzard, the sum of one thousand five hundred dollars, whenever the said building shall have been completed by the said Isaac Blizzard, and the materials and workmanship paid for, so as that no lien may be filed thereupon by any mechanic or material-man. And when the said building shall be so far finished as to be fitted for the transaction of business, the said Jacob Leiby doth hereby covenant that he will cause a good and sufficient siding to be put in along the said building, with switches at either end, for the convenient transaction of business, and when the same shall be put in, it shall be kept in order and repair by the said Isaac Blizzard, during the time he shall occupy the property; the said Jacob Leiby shall pay all state and county taxes which shall be assessed on the property during the term, and the said Isaac Blizzard all school and road taxes so assessed. With regard to the siding, Mr. Blizzard shall do the grading and preparing the ground, and Mr. Leiby shall pay all other expenses of putting in the track, and Mr. Blizzard may have it done as soon as can be.

"Now the parties understand and agree that contingencies may happen to terminate their lease before the end of five years, to wit, the death of the said Isaac Blizzard; his failure to erect the said warehouse; his failure in business after it shall have been erected, or any other contingencies which renders it impracticable to carry on the business at the said warehouse, by the said Isaac Blizzard, which he now contemplates; in that event, the parties hereby contract that the lease shall terminate, and the settlement between the parties shall be made thus:—The building, when erected according to contract, is valued at a cost of three thousand dollars, towards which Mr. Leiby will advance fifteen hundred dollars, and Mr. Blizzard fifteen hundred dollars, and the annual value of the lot and house are estimated at three hundred dollars per annum, and if the contract, therefore, shall terminate at any time within the five years, Mr. Blizzard shall be charged three hundred dollars a year rent, and be entitled to receive fifteen hundred dollars for his improvements, the lease to be considered at an end, and the property restored and settlement made upon the basis stated.

"And the parties understand that any time during the term the said Jacob Leiby shall have the privilege of erecting a distillery, and pens necessary for the same, provided that in so doing he shall not interfere with the business of the warehouse. The location to be made for the convenience of both parties. Witness our hands,

　　　　　　　　　　　　　　"ISAAC BLIZZARD, Trustee.
　　　　　　　　　　　　　　"JACOB LEIBY.

"Witness—FRED'K WATTS."

[Woodward *v.* Leiby *et al.*]

The court below (GRAHAM, P. J.), in answer to points presented by the respective parties, instructed the jury as follows :—

" This case depends more upon a question of law than of fact. The question of law arises upon the written contract of lease between Blizzard and Leiby, and, it being in writing, its construction is for the court. Under the lease, Blizzard was a tenant for years. He had no other or greater interest in the estate attempted to be encumbered.

" The 24th section of the Act of 28th April 1840, *Dunlop's Digest* 916, provides, ' That the lien created shall not be construed to extend to any other or greater estate in the ground on which any building may be erected, than that of the person or persons in possession at the time of the commencing of the said building, and at whose instance the same is erected ; nor shall any other or greater estate than that above described, be sold by virtue of any execution authorized or directed in said act.' The language of the act is too plain to be misunderstood, and its provisions are certainly just. It was intended to prevent a tenant from encumbering the fee his landlord held in the leased premises.

" But it is said, this is not only a lease for years, but a contract to build, on which Blizzard is the contractor, and Leiby the owner, within the meaning of the act. If this is the proper construction, it would put an end to improvement leases, which are very common in some parts of our state, and beneficial to both lessor and lessee. Again it is argued, this is not an ordinary improvement lease, for Leiby contracted to pay $1500 to his tenant, one-half the value of the building to be erected, and the other half was to be paid in rent, and that Leiby stipulated that the receipts of mechanics were to be produced before the $1500 were paid on the completion of the building. We cannot discover the force of the argument, that a mechanic ought to have a lien, where the landlord contracts to pay his tenant for a part of the value of the improvements made, but no lien if their entire value is to be paid by the occupancy of the tenant. The mechanic is benefited, for he has a security to which he may resort in addition to the contract of the tenant, by attaching the money in the hands of the landlord before payment to the tenant. Nor is there anything in the stipulation in the lease, that Blizzard was to produce the mechanics' receipts before payment of the $1500 by Leiby. It was inserted *ex majori cautela*, or probably in ignorance of the law that no lien could be filed. But this stipulation could not make or change the law, or give the mechanic the power to file a lien when the law gave no such power. It was a proper provision, inserted by Leiby, no doubt, in good faith, for the benefit of the workman, and to enable him to retain the money for their security ; for the evidence shows that Leiby did not pay Blizzard the balance of the $1500 until Blizzard produced the receipt of the present plaintiff and others

in full. This alone would be fatal to the plaintiff's recovery; but its effect is attempted to be avoided by the allegation that plaintiff's receipt was fraudulently obtained by Blizzard, he giving checks payable at a future day; that the plaintiff wrote badly, and consequently could not read writing, and was imposed on by Blizzard. It is not pretended, that the plaintiff did not know they were checks on Carlisle Deposit Bank. They are dated 29th August 1857, one payable 2d September, and the other 5th October following. Leiby did not settle with Blizzard and pay him the balance until 14th September 1857, sixteen days after the checks were given. If the plaintiff knew their import by extending time of payment, he released Leiby, for it is ruled, that where a mechanic gives time to a contractor, he cannot file his lien and proceed against the owner. If he did not know the checks were payable at a future day, then it was his duty to present them to bank for payment, and, when he discovered the fraud, give Leiby notice or attach the money in his hands. This would have saved all parties; but by his negligence in not presenting the checks for sixteen days, and permitting Blizzard to use his receipt with Leiby to obtain payment, we do not think he has any merit, even admitting the alleged fraud (which is very indistinctly proved), to visit Leiby with a loss occasioned by the plaintiff's negligence.

"It is true, if this case turned upon the question of fraud, it probably might be our duty to submit that question to you, for there may be a very faint glimmering of evidence on that subject. *But we rule the case on ground first stated, that Blizzard was a tenant for years, and there is nothing in the lease to change the law, so as to enable the tenant to encumber the fee with mechanics' liens on his contract.* If you believe the evidence, that the plaintiff contracted with Blizzard, and not with Leiby, you ought to find for the defendant."

To this instruction the plaintiff excepted; and a verdict and judgment having been rendered for the defendant, the plaintiff removed the case to this court, and here assigned such charge for error.

*W. M. Penrose,* for the plaintiff in error.—This agreement between Leiby and Blizzard is called a lease, and calling it so seems to have led the court into overlooking that it is something more. In consideration of a term of five years, Isaac Blizzard becomes contractor to build, in these words: "The said Isaac Blizzard doth hereby covenant and agree that he will erect, construct, build, and finish upon the said lot along the Cumberland Valley Railroad, a brick warehouse at least one hundred feet long and thirty feet wide, upon the most approved and modern plan of buildings, and cover the same with a tin roof, and *finish* it, inside

and out, in a manner that will adapt it perfectly to all the business of a warehouseman, engaged in the purchase and sale of grain; the said building *to be painted, pencilled, spotted, and in all particulars finished in the best manner and with the best materials.*" The court below say this is an improvement lease, and comes within the letter and meaning of the Act of 28th April 1840.

1. The plaintiff contends that this case is not within the letter of this act, for the terms of the lease just recited show that it is at the owner's (Leiby's) instance the building is erected, and the lessee, Blizzard, may well be treated as contractor, when he really is so: Anshutz v. McClelland, 5 *Watts* 487. 2. The plaintiff contends that the case is not within the spirit and meaning of the Act of 1840: Church v. Griffith, 9 *Barr* 119; Haworth v. Wallace, 2 *Harris* 118.

*Watts & Parker*, for the defendant in error.

The opinion of the court was delivered by

LOWRIE, C. J.—In one aspect this is a lease for years, for a rent payable in improvements; and in another, it is a contract for the erection of a warehouse for a consideration payable partly in money and partly out of the profits of the land. We do not get a complete view of the relation established, without looking at it in both these aspects. And very evidently the latter aspect presents its predominant characteristics; for, on several contingencies, the lease was to terminate, and the parties were to settle as on a mere contract for building, charging rent up to the time of such termination; and in any event, half the cost of building was to be paid in money. We think it ought to be regarded as a building contract, rather than as a lease, when we are seeking the secondary rights of the mechanics who did the work. In so doing, we do not confound building contracts, payable in rents, with improvement leases; though we do not anticipate experience by any theoretical definition of their exact differences. Our most common improvement leases provide only for such labour as is to be done by the tenant himself and his servants, and no question of mechanics' lien can arise on them. But contracts of letting and building are infinitely various in their forms, and no definition of ours can prevent this variety, for none would be bound to conform to it; and we must be content to ascertain, as cases arise, the special character of each contract, and the class to which it belongs. The error assigned is sustained.

Judgment reversed, and a new trial awarded.